**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102-5310
Telephone: 973-596-4500
Facsimile: 973-596-0405
Geraldine E. Ponto, Esq.
Attorneys for Chapter 11 Trustee

**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Case No.: 08-34810 (RTL) |
| Mark Sobel and Mary Grace Sobel, | Chapter 11 |
| Debtors. | Hearing Date: September 16, 2009<br>Hearing Time: 2:00 p.m. |

**MOTION FOR ENTRY OF ORDER (A) EXTENDING CHAPTER 11
CASE OVER 4015 WEST GULF DRIVE, LLC AND MITCHELL'S
SAND CASTLES "BY THE SEA" CO., (B) ESTABLISHING THE
DEADLINE FOR FILING CERTAIN PROOFS OF CLAIM,  AND
(C) APPROVING THE FORM AND MANNER OF NOTICE THEREOF**

TO:    THE HONORABLE RAYMOND T. LYONS
       UNITED STATES BANKRUPTCY JUDGE

Karen A. Giannelli, Chapter 11 trustee ("Trustee") for the estate of Mark Sobel and Mary Grace Sobel ("Sobels" or "Debtors"), by her attorneys, Gibbons P.C., submits this motion seeking to (a) extend the Debtors' Chapter 11 case over 4015 West Gulf Drive, LLC and Mitchell's Sand Castles "By The Sea" Co., (b) establish a deadline for the filing of certain proofs of claim, and (c) establish the form and manner of notice thereof, and respectfully states:

**RELEVANT BACKGROUND AND PROCEDURAL HISTORY**

1.    On December 14, 2008 ("Petition Date"), the Debtors filed a voluntary petition for relief under Chapter 11, Title 11, United States Code, 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code").  The Debtors continued to operate their businesses and manage their

properties pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code as debtors in possession until the appointment of the Trustee on April 24, 2009.

2. By Order dated April 16, 2009, the Court granted the motion of Sanibel Captiva Community Bank ("SanCap Bank") seeking the appointment of a Chapter 11 trustee in this case.

3. On April 24, 2009, the Acting United States Trustee for Region 3 appointed the Trustee, which was approved by Order of this Court dated April 27, 2009.

4. Prior to the Trustee's appointment, the Debtors operated a cottage rental and motel business at two locations on Sanibel Island, Florida (the "Resorts"), specifically, at 3951 West Gulf Drive, through an entity by the name of Mitchell's Sand Castles "By the Sea" Co. ("Mitchells"), and at 4015 West Gulf Drive, through an entity named 4015 West Gulf Drive, LLC ("4015" and together with Mitchells, the "Florida Entities").

5. Mitchells is a Florida corporation formed on May 22, 2003, contemporaneous with the Debtors' purchase of the motel business at 3951 West Gulf Drive, and 4015 is a Florida limited liability company formed on June 21, 2004, contemporaneous with the Debtors' purchase of the motel business at 4015 West Gulf Drive. On the Petition Date, the Debtors held 100% of the equity interests in the Florida Entities.[1]

---

[1] *See* Debtors' Schedule B - Personal Property at p. 11, filed on January 12, 2009, under penalty of perjury [Doc. No. 24], in which the Debtors scheduled their interests in the Florida Entities as jointly owned with an unknown value. *See also* Debtors' Statement of Financial Affairs, Question 18, in which the Debtors state they were the owners and officers of the Florida Entities. Statement of Financial Affairs at p. 35. *See also* Exh. A to Declaration of Mark Conlan, filed in support of the Trustee's motion to sell the assets of the Resorts, filed contemporaneously with this Motion. Mark Sobel is the managing member of 4015, and the only members of that entity are Mark Sobel and his wife, Mary Grace Sobel. *See* Exh. C to Conlan Declaration.

6.  The Debtors' Schedule of Personal Property does not reflect the Debtors' ownership of any of the personal property located at the Resorts,[2] calling into question the ownership of those assets. *See* Schedule B – Personal Property at 10 and 11.

7.  In the course of her investigation of the Debtors' financial affairs, assisted by her accountant, the Trustee and her accountant have reviewed numerous books and records of the Sobels and Mitchells and 4015. That investigation has revealed the following facts:

a)  Income and disbursements from the operation of the Resorts were made through accounts maintained by the Debtors at SanCap Bank in the name of Mitchells *as "Debtor-in-Possession"* or 4015 *as "Debtor-in-Possession."*[3] Even though neither Mitchells nor 4015 was technically a debtor-in-possession, to third parties, such as SanCap Bank, dealing with the Florida Entities, they were effectively inseparable from the Sobels.

b)  By Assignment of Rents dated May 30, 2003, duly recorded with the Clerk of Lee County, Florida, Mark Sobel and Mary Grace Sobel, as grantors, assigned to SanCap Bank the rents from the Resorts. The Florida Entities' only source of income was the rents from the Resorts, wholly owned by the Debtors and subject to SanCap Bank's assignment of rents. Based upon the assignment of rents from the Sobels, SanCap Bank moved before this Court to sequester the rents from the Resorts. By Order of this Court dated January 9, 2009 [Doc. No. 29], all rents, revenues and proceeds from the Resorts were deposited into accounts at SanCap Bank. When the Trustee assumed responsibility for the Resorts, the debtor-in-possession bank

---

[2] The Trustee has visited the Resorts and seen the personal property located there, and that personal property is not included on the Debtors' Schedule B – Personal Property. After consultation with the Debtors' accountants, the Trustee believes that such property is worth no more than $50,000 to $70,000.

[3] *See* Trustee's Initial Report Pursuant to 11 U.S.C. § 1106(a)(4)(A) Relating to the Debtors' Sanibel, Florida Resorts at pp. 4-7. [Doc. No. 131]

accounts in the names of Mitchells and 4015 were closed and the Trustee opened new accounts for the Resorts in the Trustee's name at SanCap Bank.

  c) Deposits received from guests for a future reservation would be deposited into the Mitchells or 4015 bank accounts at SanCap Bank, as the case may be, but Mitchells and 4015 did not own the rents or the deposits. Since the Trustee assumed responsibility for the Resorts, future deposits have been escrowed by the Trustee and properly accounted for as rents subject to SanCap Bank's lien.

  d) Since the Petition Date, the monthly operating reports filed with this Court have included receipts and disbursements by the Florida Entities for the Resorts.

  e) The Trustee and her accountant also have reviewed tax returns filed by Mitchells and 4015, which reflect that the Sobels used the Florida Entities as instrumentalities. For example, IRS Form 1120 for the tax year 2007 for Mitchells ("2007 Return"), on Schedule L, line 7, reflects "Loans to shareholders" in the amount of $171,698 at the beginning of that year and increasing to $373,292 at the end of 2007. Thus, in 2007, the Sobels pulled out $201,594 purportedly in loans from the Mitchells Resort. The 2007 Return shows on Schedule L, line 6, a current asset of $71,279 in 2007, which Statement 4 explains is an amount "Due from Affiliate." Statement 5 to the 2007 return shows a current liability of $92,071 at 2007 year-end described as "Due from [sic] Affiliate." The 2007 Return shows that the Sobels personally were taking cash out of Mitchells and moving cash between Mitchells and 4015.

  f) Except for separate tax returns and formation documents, however, the Trustee has not found any documents reflecting that Mitchells or 4015 maintained independent operations or corporate formalities. There were no management agreements in place, and no corporate minutes maintained for Mitchells.

8. The Trustee's investigation of the Debtors' financial affairs reveals that neither Mitchells nor 4015 were operated as separate and independent management companies. The Trustee learned these facts from discussions with the Debtors' accountant, Michael Pucciarelli, CPA, and one of the Debtors' pre-petition attorneys, Jordan Yuelys, Esq., both of whom rendered services to the Florida Entities as well as the Debtors.

9. Based upon the Trustee's investigation and after consultation with her accountant and the Debtors' accountant, the Trustee has concluded that Mitchells and 4015 were mere instrumentalities and business conduits of the Sobels who at all times were actually the hands-on managers and operators of the Resorts.

## REQUESTED RELIEF AND GROUNDS FOR RELIEF

**A.    Substantive Consolidation**

10. The Trustee seeks to extend the Chapter 11 case of the Sobels over the non-debtor entities, Mitchells and 4015, and to collapse their assets and liabilities, if any, into a single estate of the Sobels' estates[4] retroactive to the Petition Date pursuant to Section 105(a) of the Bankruptcy Code.

11. In support of the Motion, the Trustee relies upon the Declaration of Philip J. Murphy, C.P.A, with Exhibit A, filed contemporaneously with this Motion in further support ("Murphy Decl., ¶__"), the Sobels' statements and schedules filed in this case in accordance with Rule 1007(b) of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"); the Trustee's verified motion for approval of the sale of the Debtors' real and personal property and businesses

---

[4] Section 302(b) of the Bankruptcy Code provides with respect to a joint case of a husband and wife, such as the Sobels' case, that "the court shall determine the extent, if any, to which the debtors' estates shall be consolidated." 11 U.S.C. § 302(b). In the same way that there is unity of interests, intertwined financial affairs, and potential difficulty in segregating such affairs as between the Sobels and Mitchells and 4015, those elements are intensified when it comes to Dr. and Mrs. Sobel. Accordingly, the Trustee requests that the Sobels' estates be consolidated as well to form one estate with Mitchells and 4015.

located at 3951 and 4015 West Gulf Drive, Sanibel, Florida, free and clear of all liens, claims, encumbrances and interests, except for the Assumed Liabilities and Permitted Encumbrances ("Sale Motion"), as defined in that motion, and the supporting Declaration of Mark Conlan and attached exhibits ("Conlan Decl., ¶__"); other specific pleadings referenced in this Motion and other docketed pleadings in this case, as necessary.[5]

12. It is well-established that a debtor's bankruptcy case may be extended over a non-debtor in appropriate circumstances. *Sampsell v. Imperial Paper & Color Corp.*, 313 U.S. 214, 218 (1941). *See also In re Plymouth Dyeing Co.*, 323 F.2d 134, 137-38 (3d Cir. 1963)(corporate bankruptcy case extended over another corporation that functioned together as a single economic unit), *cert. dismissed,* 375 U.S. 998 (1964); *In re Gucci*, 174 B.R. 401, 413-14 (Bankr. S.D.N.Y. 1994)(individual debtor's bankruptcy case extended over entities that were alter egos of the individual debtor).

13. Substantive consolidation is an equitable remedy. *In re Owens Corning*, 419 F.3d 195, 210 (3d Cir. 2005). Many courts consider a variety of factors in determining whether substantive consolidation is an appropriate remedy. *Id.* The remedy can be granted on a less mechanical approach than the "single economic unit" approach. *See, e.g., In re 599 Consumer Elec. Inc.*, 195 B.R. 244, 250 (S.D.N.Y. 1996) ("[a] finding that creditors knew they were dealing with separate entities does not necessarily preclude substantive consolidation on the ground that it is impossible or prohibitively expensive to unravel the debtors' commingled finances"). Substantive consolidation can be ordered when it is necessary to "ensure the equitable treatment of all creditors." *In re Augie/Restivo Banking Co., Ltd.*, 860 F.2d 515, 518-

---

[5] This Court may take judicial notice of pleadings, briefs and orders on file in this case. *See Shuttlesworth v. City of Birmingham, Ala.*, 394 U.S. 147, 157 (1969)(courts may take judicial notice of their own record). Accordingly, the Trustee asks the Court to take judicial notice of all pleadings referenced in this Motion.

19 (2d Cir. 1988). Section 105(a) of the Bankruptcy Code provides bankruptcy courts with the equitable power to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). *See also Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548, 568 (3d Cir. 2003) (en banc)(bankruptcy courts have the equity power to craft a remedy consistent with the policies and objectives of the Bankruptcy Code).

14. Numerous courts have found that whether consolidation is an appropriate remedy is determined on a case-by-case basis. *FDIC v. Colonial Realty Co.*, 966 F.2d 57, 59 (2d Cir. 1992). According to the Third Circuit, the most important factors to be considered in making that determination, absent consent, are i) prepetition creditors disregarding the separateness of the entities, and ii) intertwined financial affairs making any attempt postpetition to unscramble them prohibitive and harmful to creditors. *In re Owens Corning,* 419 F.3d at 211. Recognizing that substantive consolidation is a remedy to be used sparingly, *id.*, the facts and circumstances in this case warrant an extension of the Sobels' Chapter 11 case over Mitchells and 4015 for at least the following reasons:

a) Mitchells and 4015 are owned and controlled by the Debtors. Thus, there is unity of interest and ownership. *See* Exhs. A and C to Conlan Decl.

b) Historically, the Sobels' personal attorneys and accountants also provided professional services to Mitchells and 4015, when necessary, apparently recognizing the unity of interests among them and finding no conflicting interests.

c) At least some of the Resorts' transactions were done in cash, *see* SanCap Bank's Application for Appointment of Chapter 11 Trustee, ¶17(a) at 4 [Doc. No.60-1], and at times the

Sobels have taken "loans" from the Florida Entities' cash flow and the Resorts' proceeds were commingled with other Sobel entities and with one another. Murphy Decl., ¶¶6 and 8.

      d)      The Trustee is in the process of negotiating a sale of the Resorts conditioned upon, among other things, the buyer acquiring the Resorts as going concerns, including the personal property located there. *See* Exh. A to proposed form of order on the Sale Motion. As indicated above, based upon the fact that the personal property at the respective Resorts is *omitted* from the Debtors' Schedule of Personal Property, it appears that that property has at all times been considered by the Sobels to belong to Mitchells and 4015, as applicable. Whether that is the view of third parties, however, is questionable. *See, e.g.*, UCC-1 filed by Colonial Bank, N.A., naming Mark Sobel as debtor and purporting to encompass in its lien, among other things, the personal property at the Resorts. Exh. G to Conlan Decl., ¶9.

      e)      On the liability side, the UCC searches for Mitchells and 4015 do not reflect any liens. Conlan Decl., ¶6, and Exh. D thereto. However, just as a creditor of Mark Sobel may assert a claim against assets believed to be assets of Mitchells and 4015, evidenced by the UCC-1 statement filed by Colonial Ban, discussed in subparagraph d) above, vendors of goods and services to the Resorts who were in privity with Mitchells and/or 4015, may have claims against the Florida Entities that have been or could be asserted against the Debtors as alter egos of the Florida Entities. For example, Sovereign Bank filed a UCC-1 statement against Mark Sobel, *see* Exh. G to Conlan Decl., ¶9, which arguably could constitute a lien against the proceeds of the personal property he may own. The Sobels are not aware of any debt owed to Sovereign-- personal or otherwise. Sovereign does not appear to have received formal notice of the Sobels' Chapter 11 filing and did not file a proof of claim. Sovereign has not responded to the Trustee's informal attempts to ascertain the basis for the filing of the UCC-1 against Mark Sobel.

Extending the Sobels' case over the Florida Entities will (i) enable a bar date to be fixed for any creditors of Mitchells and 4015 to file proofs of claim and (ii) provide an orderly and economical way to address all such claims in a single forum.

      f)      While it does not appear the Florida Entities were created as a subterfuge to conceal assets of the Debtors outside their bankruptcy estates, unless those Entities are brought into the Chapter 11 case of the Debtors, their separate structures as corporation and limited liability company, respectively, may result in an injustice to the Debtors' estates.

      g)      In light of the economic, worldwide recession, the marketability of the Resorts has been dramatically affected by longer marketing periods and market value reductions. The Debtors' creditors would be prejudiced if the Trustee is hindered in her sale negotiations and unable to sell the Resorts as going concerns, together with their personal property.

      h)      The Trustee expects to realize from the contemplated sale proceeds that combined with cash on hand from the Resorts would be sufficient to satisfy known claims against the Florida Entities. When combined with other assets in the estate, the Trustee foresees no prejudice to any creditors of the Florida Entities or the Sobels if the non-debtors are substantively consolidated with the Sobels' estate. Moreover, it appears that creditors could be harmed if substantive consolidation is not ordered based upon the complication and cost, if it could be done, of attempting to untangle the Sobels' financial affairs from those of the Florida Entities.

      i)      The Trustee has conferred with the Debtors' accountant and the Trustee's accountant who have advised the Trustee that bringing the Florida Entities into the Chapter 11 estates of the Sobels will not result in any adverse tax consequences to the Sobels' estates. Because the Florida Entities depreciated the personal property on their tax returns, a portion of

the purchase price will be allocated to the "personal property," including the trade names, Mitchells and Forty/Fifteen, in order to eliminate any tax consequence to the Florida Entities from the contemplated sale.

15. For the reasons discussed above, if substantive consolidation is not approved and the contemplated sale is not consummated, the Sobels' estate could lose any hope of any recovery from the Resorts. That potential loss would affect all creditors.

**B.  Fixing Second Claims Bar Date**

16. By Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors, & Deadlines filed on January 13, 2009 [Doc. No. 25],[6] creditors scheduled by the Sobels were notified, among other things, that the deadline to file a proof of claim in this case was May 20, 2009 ("First Bar Date"). The Debtors' matrix of creditors includes certain interested parties in Florida, such as the Lee County taxing authority and SanCap Bank, *see, e.g.*, Certificate of Notice [Doc. No. 27], but it appears that it does not include *all* interested parties in Florida, such as third party vendors to the Florida Entities and State of Florida taxing authorities. Accordingly, it appears that all interested parties in Florida did not receive notice of the First Bar Date.

17. By this Motion, the Trustee requests that the Court (a) fix Monday, October 19, 2009, at 4:00 p.m. ("Second Bar Date"), as the deadline by which interested parties in Florida, including vendors to the Florida Entities and excluding certain creditors, as described below, must file a proof of claim against the combined estate of the Florida Entities and the Sobels

---

[6] This was the second Notice sent to creditors. An initial Notice of the commencement of the Chapter 11 case, the meeting of creditors and the deadline to file proofs of claim was filed on January 5, 2009 [Doc. No. 17], at which time the Debtors had not filed all of the necessary schedules and statements in accordance with Bankruptcy Rule 1007(b). When that was done, the Court issued a second Notice. The date for the meeting of creditors and the deadline for filing a proof of claim, however, did not change in the second Notice.

arising as of the Petition Date, and (b) approve the form and manner of notice of the Second Bar Date, including publication notice in Florida.

18. Bankruptcy Rule 3003(c)(2) states that any creditor or equity security holder whose claim or interest is not scheduled or is scheduled as disputed, contingent, or unliquidated must file a proof of claim within the time prescribed by Bankruptcy Rule 3003(c)(3). Bankruptcy Rule 3003(c)(3) states that the court shall fix a time period within which proofs of claim may be filed in a chapter 11 case. Bankruptcy Rule 9007 states that the court shall designate "the entities to whom, and the form and manner in which," notices may be given.

19. The Second Bar Date would apply to each person or entity that holds a "claim" (as defined in § 101(5) of the Bankruptcy Code) against the Debtors, including Mitchells and 4015, if substantive consolidation is granted by the Court, that arose prior to the Petition Date, except for the following types of claims which are excluded from the Second Bar Date (the "Excluded Claims"):

    a) claims against the Debtors and the estate already filed with the Clerk of the Bankruptcy Court ;

    b) claims held by persons who previously received notice of the First Bar Date; and

    c) claims that have been paid in full.

20. The Second Bar Date is approximately 30 days after the anticipated date for service of notice, as discussed below, in compliance with Bankruptcy Rule 2002(a)(7).

21. Fixing of the Second Bar Date will enable the Trustee to receive, process and begin an analysis of creditors' claims in a timely and efficient manner and facilitate the administration of the Chapter 11 cases.

C.  **The Proposed Manner of Service of the Bar Date Notice**

22. The Trustee requests that the Court approve the proposed notice of the Second Bar Date in the form attached to this Motion as <u>Exhibit A</u> ("Bar Date Notice").

23. The proposed Bar Date Notice provides that any alleged holder of a claim against the estate who is required, but fails, to timely file a proof of claim on or before the Second Bar Date shall be forever barred, estopped, and enjoined from asserting such claim against the estate and the Debtors and their property shall be forever discharged from any and all indebtedness or liability with respect to any such claim; and such holder shall not be permitted to vote to accept or reject any plan of reorganization or participate in any distribution in the Debtors' Chapter 11 cases on account of such claim or to receive further notices regarding such claim.

24. The Trustee will serve the Bar Date Notice within three (3) days of entry of an order approving this Motion by United States first-class mail, postage prepaid, together with a proof of claim form that conforms substantially to the official claim form upon: (i) all parties who have previously filed notices of appearance in these cases and (ii) all interested parties in Florida, including State of Florida and federal taxing authorities, vendors to the Florida entities, and other potential holders of claims against the Florida Entities, but excluding customers of the Florida Entities and any creditor who received notice of the First Bar Date.

25. Section 502(b)(9) of the Bankruptcy Code provides that the "claim of a governmental unit shall be timely filed if it is filed before 180 days after the date of the order for relief or such later time as the Federal Rules of Bankruptcy Procedure may provide. . . ." 11 U.S.C. § 502(b)(9). Considerably more than 180 days have elapsed since the Petition Date. The Trustee submits that the state and federal taxing authorities will have ample time to prepare and file a timely proof of claim by the Second Bar Date following notice as provided above.

Accordingly, the Trustee requests that governmental units be compelled to file any claims for unpaid taxes or any other claims on or before the Second Bar Date.

26. The Trustee believes that the notice provided for is adequate to inform all persons or entities holding claims subject to discharge in this Chapter 11 case of their right to file a proof of claim and the consequence of failing to file a proof of claim timely.

27. In addition to mailing the Bar Date Notice, the Trustee has determined that it would be in the best interest of the estate to supplement that notice by publication notice in Florida.  In accordance with Bankruptcy Rules 2002(f) and (l), the Trustee seeks authority to publish the Bar Date Notice, in the form submitted with this Motion for approval, in Island Sun Newspaper in Sanibel, Florida, where the Florida Entities do business, as soon as practicable following entry of an order approving the Motion, providing notice as required by Bankruptcy Rule 2002(a)(7).

28. The proposed Bar Date Notice and the publication of the Bar Date Notice notify interested parties of the Second Bar Date.  The Bar Date Notice contains information about who must file a proof of claim, where to file a proof of claim, and the consequences of failure to timely file a proof of claim.  The Trustee requests that the Court approve the use and content of the Bar Date Notice and the publication in which the Trustee proposes to publish such Notice.

29. The Trustee reserves the right to object to any proof of claim on any ground.  The Trustee reserves her right to dispute, or to assert offsets or defenses to any claim scheduled or filed, including any amendments thereto.

**NOTICE AND HEARING**

30. The Trustee has provided notice of this Motion to the Office of the Acting United States Trustee for Region Three; bankruptcy counsel for the Debtors; the accountants and pre-bankruptcy counsel to the Debtors; counsel for all known secured and unsecured creditors of the

Sobels and any known parties asserting a claim against the Florida Entities; vendors to the Florida Entities; local, state and federal taxing and other governmental authorities; any other known, potentially interested parties in Florida; parties in interest who have filed a notice of appearance or request to receive notices and pleadings in this case; and electronic notice through the Court's PACER system. The Trustee proposes to send the Bar Date Notice to such list of interested persons.

31. Excluded from the service list are guests of the Resorts who have placed deposits for future stays. As discussed above, the Trustee is filing a motion to sell the Resorts as going concerns. The sale motion contemplates that any liability to such customers for a return of their deposits, if necessary, will be satisfied either from the escrow of such deposits maintained by the Trustee or assumed by the buyer. There are no known claims of customers and the customer list is confidential. In light of the facts and circumstances, customers are not affected by the Motion.

32. The Trustee believes that the notice provided for is appropriate and adequate notice in the circumstances of this matter. The Trustee submits that any further notice is unnecessary and, accordingly, be dispensed with.

33. The Trustee has not previously sought the relief requested by this Motion from this or any other court.

WHEREFORE, the Trustee respectfully requests entry of the proposed Order submitted with this Motion and for such other relief as is appropriate and just.

**GIBBONS P.C.**
Attorneys for Chapter 11 Trustee

By:  /s/ Geraldine E. Ponto
     Geraldine E. Ponto

Dated: August 27, 2009
       Newark, New Jersey

**EXHIBIT A**

#1432559 v1
109122-66131

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>Mark Sobel and Mary Grace Sobel, and Mitchell's Sand Castles "By the Sea" Co. and 4015 West Gulf Drive, LLC,<br><br>Debtors. | Case No. 08-34810 (RTL)<br><br>Chapter 11 |

**IMPORTANT NOTICE TO CREDITORS**

**Please take notice that:**

1.  By Order of the United States Bankruptcy Court for the District of New Jersey ("Court") dated _____ ("Consolidation Order")[Doc. No. ____], the Court granted the motion of Karen A. Giannelli, Chapter 11 trustee ("Trustee") for the bankruptcy estate of Mark Sobel and Mary Grace Sobel, husband and wife ("Sobels"), and ordered that the assets and liabilities of Mitchell's Sand Castles "By the Sea" Co. ("Mitchells") and 4015 West Gulf Drive, LLC ("4015"), entities formed by the Sobels under applicable Florida law and wholly owned by the Sobels, be substantively consolidated with the estates of the Sobels. A copy of the Consolidation Order and the underlying motion for it may be obtained in portable document format (PDF) using Adobe Exchange software for conversion, by accessing the Court's web site at www.njb.uscourts.gov.

2.  As a result of the Court's Consolidation Order, there is now one consolidated bankruptcy estate for the Sobels, Mitchells and 4015 under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.,* being administered by the Trustee.

3.  Pursuant to the Consolidation Order, all persons and entities holding claims against Mitchells or 4015, whether such claim is secured or unsecured, liquidated or unliquidated, fixed or contingent, that arose on or before December 14, 2008, except for certain Excluded Claims, as described below, must take the following *time sensitive action*:

    i)   Complete a proof of claim on Official Bankruptcy Form No. 10. A copy of the official proof of claim form is enclosed with this Important Notice.

    ii)  Sign the completed proof of claim.

    iii) File the completed and signed proof of claim together with accompanying, supporting documentation (or a summary thereof, if voluminous), on account of any such claim, or an explanation as to why such documents are not available. The completed and signed proof of claim on Official Bankruptcy Form 10 together with accompanying, supporting documentation is hereinafter referred to as the "Completed Claim."

    iv)  The Completed Claim may be filed with the Court in one of the following two ways:

    - If a claimant who is represented by an attorney who possesses an electronic case management ("ECF") system login and password for the Court, the Completed Claim may be filed electronically through the internet at the Court's website: www.njb.uscourts.gov. Completed Claims filed through the Court's ECF system are accepted in PDF format only.

    - Original Completed Claims may be transmitted by mail, courier or hand delivery to the Clerk of the Court at the following address:

        James J. Waldron, Clerk
        United States Bankruptcy Court
        402 East State Street
        Trenton, NJ  08608
        Telephone:  609-989-2200
        Business Hours:  8:30 a.m. to 4:00 p.m.

    - Completed Claims shall be deemed filed only when actually received by the Clerk of the Court at the address specified immediately above.

    - Proofs of claim submitted by facsimile, telecopy, or electronic mail will not be accepted.

    v)   **The deadline for filing the Completed Claims is 4:00 p.m., Eastern Time, on October 19, 2009.**

    vi)  Claimants with the following types of claims ("Excluded Claims") are *not required* to comply with the steps above:

    (a) claims against the estate already filed with the Clerk of the Court;
    (b) claims held by persons who previously received notice of a May 20, 2009 deadline to file a claim; and
    (c) claims that have been paid in full.

    vii) Any holder of a claim against the consolidated estate who is required, but fails, to file a proof of claim on or before the deadline specified above shall be forever barred, estopped and enjoined from asserting such claim against the substantively consolidated estate (or filing a proof of claim with respect thereto); and the Debtors and their estate shall be forever discharged from any and all indebtedness or liability with respect to such claim; and such holder shall not be permitted to vote on any plan of reorganization or participate in any distribution in the Debtors' Chapter 11 cases on account of such claim or to receive further notices regarding such claim.